IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

**MANDY MANUEL**                                                                                             **PLAINTIFF**

v.                                         No. 1:17-CV-00127-BRW-PSH

**NANCY A. BERRYHILL,**
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security                                                                                              **DEFENDANT**

## RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### REASONING FOR RECOMMENDED DISPOSITION

Mandy Manuel applied for social security disability benefits with an alleged disability onset date of January 1, 2015. (R. at 58). After a hearing, the administrative law judge (ALJ) denied her application. (R. at 24). The Appeals Council denied Manuel's request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Manuel has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

1

## I. The Commissioner's Decision

The ALJ found that Manuel had the severe impairments of osteoarthritis, fibromyalgia, carpal tunnel syndrome, degenerative disk disease of the lumbar spine, affective disorder, anxiety disorder, bilateral hearing loss, and obesity. (R. at 12). As a result of the impairments, the ALJ determined that Manuel had the residual functional capacity (RFC) to perform light work except that she could occasionally stoop, kneel, crouch, and crawl; occasionally reach overhead; must avoid noise above the moderate level due to hearing loss; would be limited to communicating and hearing simple oral instructions; and would be limited to simple, routine tasks, with occasional changes in the routine work setting. (R. at 15). The ALJ took testimony from a vocational expert (VE) and determined that Manuel could not perform her past relevant work. (R. at 22). The VE testified, however, that the RFC would allow jobs such as sales attendant or office helper. (R. at 23). The ALJ therefore held that Manuel was not disabled. (R. at 24).

## II. Summary of Medical Evidence

Manuel presented to Charles Varela, M.D. on January 12, 2015 with bilateral anterior shoulder pain and occasional numbness in the median distribution of both hands. She had full range of motion in both shoulders and marked tenderness at the anterior acromion bilaterally. The impression was bilateral subacromial bursitis and mild bilateral carpal tunnel syndrome. Dr. Varela performed subacromial injections in both shoulders, advised her to restrict overhead activities and use anti-inflammatories; and advised her that she would not be a candidate for carpal tunnel surgery unless her symptoms worsened significantly. (R. at 330).

Manuel visited James Allen, M.D. on February 19, 2015 with continued complaints of shoulder pain, with the left worse than the right. (R. at 334). She had localized tenderness to palpation, pain with range of motion, and diffuse weakness. (R. at 336). An MRI was conducted on February 23, 2015, which showed mild supraspinatus tendinopathy without a discrete tear, no partial or full-thickness rotator cuff tear; minimal intra-articular biceps tendinopathy; and minimal reactive edema at the acromial clavicular joint. (R. at 337). She returned for follow-up on March 3, 2015, when she stated that her discomfort had been improving since her last visit. (R. at 339). Treatment options were discussed, and Manuel opted for non-steroidal anti-inflammatory medication management for the time. (R. at 341).

On May 31, 2015, Michael Carter, D.N.P., A.P.R.N. stated that he recalled treating Manuel between October 2009 and March 2014. (R. at 344). He stated that she kept appointments and that her torn right rotator cuff and multiple muscle aches and pains prevented her from performing some aspects of her job. (R. at 344). He stated that her pain did not respond to the treatment his practice could offer. (R. at 344).

On September 10, 2015, Manuel saw Neeraj Kumar, M.D. for back and hip pain and bilateral shoulder pain. (R. at 576). A history of fibromyalgia and left rotator cuff tear was noted. (R. at 576). Dr. Kumar recommended diagnostic bilateral lumbar medical branch blocks at L3–L4, L4–L5, and L5–S1. (R. at 578). Dr. Kumar also agreed to opioid therapy. (R. at 579). On October 8, 2015, Manuel stated that her pain had not changed significantly but was manageable with medications, that the medication improved her activity levels and quality of life, and that she experienced no side effects from the medication. (R. at 678). She reported being able to perform activities of daily living with her current medication regimen. (R. at 680). She reported exacerbation of

her pain on December 2, 2015. (R. at 681). Medication was adjusted, and she was advised to avoid bed rest and maintain normal activities. (R. at 683). She reported on January 27, 2016, that her pain was not manageable with medications. (R. at 743). On March 16, 2016, Manuel returned for follow-up stating that her pain continued despite increasing her hydrocodone, that her pain was not well controlled, and that she wanted to consider intervention. (R. at 739). Dr. Kumar recommended diagnostic bilateral thoracic medial branch blocks and possible medial branch neurotomy if branch blocks proved successful. (R. at 741).

Manuel presented to Amber Fore, A.P.R.N. on March 29, 2016 for back pain. (R. at 766). She was instructed to continue pain management and get a thoracic MRI. (R. at 769). On March 30, 2016, Nurse Fore filled out a medical source statement indicating that Manuel could lift and carry less than ten pounds; walk about two hours in an eight-hour workday; sit about two hours in an eight-hour workday; needed frequent rest periods, longer than normal breaks, and a sit/stand at will option; could not reach; could occasionally finger; could occasionally handle; and would miss more than three days of work per month. (R. at 748–49). Manuel had an MRI of the thoracic spine on March 31, 2016, which showed no significant degenerative changes and no spinal canal narrowing or foraminal narrowing. (R. at 772).

On May 26, 2016, Manuel failed to show up for a medial branch block and stated that she did not want to reschedule and that her pain was somewhat manageable with hydrocodone. (R. at 782).

On June 1, 2016, she followed up with Nurse Fore and reported tenderness and back pain and was referred for a hearing test. (R. at 765).

4

On July 5, 2016, Manuel had a hearing evaluation and was assessed with bilateral sensorineural hearing loss and tinnitus. (R. at 779).

Manuel had a left hip bursa steroid injection on August 4, 2016. (R. at 786). She reported that the injection did not help at a follow-up on August 31, 2016. (R. at 793).

Manuel reported to Nurse Fore on September 6, 2016 that her back pain was worsening and interfering with her sleep. (R. at 809).

### III. Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Manuel argues that the ALJ failed to find limitations in handling and fingering, improperly weighed the opinions of the treating and non-examining physicians, and relied on VE testimony that is inconsistent with the *Dictionary of Occupational Titles* (DOT). Manuel's arguments fail for the reasons stated below.

#### a. Limitations on Handling and Fingering

Manuel first contends that the ALJ failed to include limitations in her ability to handle and finger despite finding that her osteoarthritis, fibromyalgia, and carpal tunnel syndrome are severe impairments.

As the Commissioner correctly observes, the ALJ included such a limitation in the text of the decision, even though it is absent in the summary of the RFC. The ALJ stated that "the undersigned has restricted the claimant to . . . less than constant

handling and fingering." (R. at 20). More importantly, however, the ALJ presented a hypothetical question with this limitation to the VE, who testified that such a limitation would not eliminate either of the jobs identified. (R. at 53). Therefore, the undersigned must conclude that the ALJ's omission of this limitation in the RFC description was a harmless drafting error, as the inclusion of the limitation was contemplated and would not have affected the availability of jobs that Manuel could perform.

### b. Medical Opinions

Manuel next contends that the ALJ erred in weighing the opinions of various medical providers, including her treating providers. The ALJ must give good reason for the weight given to each opinion. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). The ALJ's reasons for the weight given to each opinion are sufficient for the reasons stated below.

**Nurse Carter**

Nurse Carter had an extensive treating relationship with Manuel, but the ALJ gave his opinion little weight. (R. at 19). Manuel argues that Nurse Carter's opinion is entitled to greater weight because of the treating relationship. However, as Manuel acknowledges, Nurse Carter last treated her in March 2014. (R. at 342). Manuel's alleged onset date was January 1, 2015. Therefore, Nurse Carter's treating relationship with Manuel ended well before her alleged onset date, and he would therefore have no knowledge of her condition during the relevant period. Nurse Carter had no basis for stating that Manuel became disabled in January 2015. (R. at 344). The ALJ explained these reasons, and they are sufficient reasons to give Nurse Carter's opinion little weight.

**Nurse Fore**

The ALJ also gave little weight to the opinion of Nurse Fore. (R. at 20). Manuel admits that checkbox opinions such as Nurse Fore's are entitled to little weight but argues that the ALJ relied on the State Agency consultants' opinions, which are similarly checkbox opinions. The undersigned addresses the weight given to the State Agency consultants' opinions below. However, regardless of the weight given to other opinions, the question remains whether the ALJ gave good reason for giving little weight to Nurse Fore's opinion. As the ALJ stated, an MRI of Manuel's thoracic spine showed no significant degenerative changes. (R. at 772). Nurse Fore also documented largely normal findings on examination. (R. at 768). Additionally, as Manuel admitted, such a checkbox opinion is entitled to little weight. *Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997). As such, the undersigned cannot find that Nurse Fore's opinion was entitled to more weight.

**State Agency Consultants**

Manuel argues that the ALJ should not have credited the opinions of the State Agency consultants who never examined her. The ALJ only gave partial weight to these opinions, noting that they were not entirely consistent with the evidence, and the ALJ found greater limitations than the State Agency consultants. (R. at 19). Manuel argues that the State Agency consultants' opinions were entitled to less weight, given that they are themselves largely checkbox opinions like the one the ALJ discredited from Nurse Fore. However, the State Agency consultants did provide some additional narrative to support their conclusions. (R. at 66–72, 86–92). The ALJ's granting of partial weight to these opinions is supported by sufficient reason.

**Dr. Varela**

Manuel further contends that the RFC does not sufficiently account for the restrictions found by Dr. Varela, arguing that occasional overhead reaching does not sufficiently account for Dr. Varela's recommendation to limit overhead work. (R. at 330). The ALJ restricted Manuel to occasional overhead reaching due to Dr. Varela's opinion. (R. at 20). As Dr. Varela provided no specifics as to how limited Manuel's overhead activities should be, the undersigned cannot say that the ALJ's restriction to occasional overhead reaching does not properly account for Manuel's shoulder impairment.

**Dr. Allen**

Next, Manuel maintains that the ALJ failed to consider the findings of Dr. Allen, who recommended surgery for her shoulder and noted pain and shoulder impingement. (R. at 339–41). Manuel claims that the ALJ did not fully consider Dr. Allen's opinions and did not even mention him by name.

The ALJ did not identify Dr. Allen by name in the decision, but the ALJ did specifically consider Dr. Allen's treatment records. (R. at 16–17). As the Commissioner observes, most of these records are simply statements of Manuel's complaints rather than examination findings. Moreover, Dr. Allen issued no statement of a medical opinion that required weighing. With all these considerations, the undersigned cannot find that the ALJ ignored Dr. Allen's treatment records or failed to weigh the evidence he provided.

**Dr. Kumar**

8

Dr. Kumar treated Manuel for back pain, and Manuel argues that the RFC is inconsistent with Dr. Kumar's records. Specifically, she maintains that Dr. Kumar's treatment records do not support the ability to occasionally reach overhead. She notes that Dr. Kumar's records indicate that her pain did not respond to various treatments. (R. at 578–79). The Commissioner contends that Dr. Kumar's treatment notes do not provide significant insight into her ability to perform overhead reaching. Dr. Kumar placed no specific limitation on Manuel's ability to reach. Certainly, Dr. Kumar's records indicate that there is some limitation in Manuel's ability to reach, but they do not indicate a more severe limitation than occasional. The undersigned cannot find that the RFC is inconsistent with Dr. Kumar's treatment records.

### c. VE Testimony

For her third major argument, Manuel asserts that the VE's testimony contradicted the DOT in two ways. First, she argues that the jobs identified by the VE require frequent reaching that would not be allowed by the RFC. Second, she maintains that the VE identified jobs at reasoning levels two and three and that the RFC only allows for level one reasoning. Both arguments fail for the reasons stated below.

**Reaching Requirements**

The VE identified jobs that require frequent reaching. Manuel and the Commissioner both acknowledge that this creates a seeming conflict between the VE's testimony and the DOT. The Eighth Circuit has reversed where an RFC limited a claimant to occasional overhead reaching and the VE identified jobs that required constant reaching. *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014). In *Kemp*, the conflict was not resolved in the record. *Id.* However, in this instance, the ALJ asked the VE about overhead reaching requirements and the VE testified that the DOT

does not specifically address overhead reaching and that his testimony was based on his experience. (R. at 54). The RFC limited Manuel to occasional overhead reaching, and the conflict between this limitation and the VE's testimony and the DOT was resolved properly.

**Reasoning Level**

Finally, Manuel argues that the RFC's limitation to "communicating and hearing simple oral instructions" and "simple, routine tasks, with occasional changes in the routine work setting" is inconsistent with the jobs identified by the VE, as those jobs require level two or three reasoning. (R. at 15). Manuel argues that the RFC limits her to reasoning level one jobs.

The Eighth Circuit has held that reasoning level two jobs are consistent with a limitation to simple instructions and simple work. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Recently, the Eighth Circuit held that a limitation to one to two step tasks was inconsistent with reasoning level two. *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018). The court in *Moore* specifically noted that the RFC was not limited to one to two step instructions in holding that simple work was consistent with level two reasoning. 623 F.3d at 604. The RFC in the present case falls in line with the example from *Moore*, having no limitation to one to two step tasks. Therefore, the undersigned cannot find that there is a conflict between reasoning level two jobs and the RFC. As the VE identified a reasoning level two job with 150,000 to 160,00 such jobs in the national economy, the argument that reasoning level three is inconsistent with the RFC is moot. (R. at 23).

IV. **Recommended Disposition**

The ALJ did not err in weighing the medical opinion evidence or fail to resolve conflicts in the VE's testimony. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 8th day of November, 2018.

                                                                                                   _____
                                                   PATRICIA S. HARRIS
                                                 UNITED STATES MAGISTRATE JUDGE